# IN THE COURT OF APPEALS OF IOWA

No. 21-0241
Filed April 28, 2021

IN THE INTEREST OF J.B. and R.B.,
Minor Children,

R.B., Father,
        Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Stephanie Forker

Parry, District Associate Judge.


        A father appeals an order adjudicating his children in need of assistance.

**AFFIRMED.**


        Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant

father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney for minor

children.

        Dean Fankhauser, Sioux City, guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals an order adjudicating his children in need of assistance (CINA). He contends the record lacks clear and convincing evidence to support the four grounds for adjudication cited by the district court. *See* Iowa Code § 232.2(6)(b), (c)(2), (f), (n) (2020). Because the basis for adjudication may affect the grounds for termination of parental rights, if the case progresses to that point, we will address each of the grounds. *See In re J.S.*, 846 N.W. 36, 41 (Iowa 2014) ("The grounds for a CINA adjudication do matter. For example, a CINA determination under section 232.2(6)(*b*) may lead to termination of parental rights under section 232.116(1)(d), whereas a CINA determination under section 232.2(6)(c)(2) cannot." (citations omitted)).

### 1. *Iowa Code section 232.2(6)(b)*

Iowa Code section 232.2(6)(b) defines a "[c]hild in need of assistance" as "an unmarried child" "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." Physical abuse or neglect refers to "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." *J.S.*, 846 N.W.2d at 41 (quoting Iowa Code § 232.2(42)).

The department of human services investigated several allegations of physical abuse by the father, including an episode that occurred shortly before the child-in-need-of-assistance petition was filed. While the agency declined to

confirm the allegations, the most recent episode underscored the probability of imminent physical abuse.

According to the child protective worker who investigated the episode, the older child said her father "threatened to dump . . . boiling hot water on" the children for being loud and waking him up. She also told the worker her father followed her into her bedroom and "grabbed her by the throat with one hand and threw her on the bed." As she tried to fend him off, the father "grabbed her wrist with his other hand" and "placed both of his hands on her wrists." The child called her friend who came over and told her "there was a red mark on her chest area."

The child described past incidents in which "things g[o]t physical at home sometimes." She said "glass plates and bowls [got] thrown sometimes," although "no one ever [got] injured."

The child protection worker visited the home to speak to the father about the episode. She observed him wake the child up and yell at her. When the worker confronted him with the physical abuse allegation, the father approached the worker "grabbed [her] face with both of his hands, and started yelling [an expletive] into [her] face." He told the worker that is what happened on the night "he put his hands on" the child. He denied placing his hands around the child's throat but admitted grabbing her wrist "to stop her from hitting at him."

The child protective worker also spoke to the younger child. He denied that the father physically abused the older child but told the worker "he is afraid of his dad."

The older child's in camera statements to the district court support the narrative contained in the child protective worker's most recent child abuse report.

The child told the court there were "times where [her father] [threw] stuff at [her],"
including "a glass bowl" and "a glass plate." She recounted that, on one occasion,
he "pushed [her] on the bed and grabbed [her] by [her] face and was like 'Don't
ever tell me to shut the eff up again.'" On another occasion, he took her phone
and "came at [her] and [she] tried hitting him, and then he, like took [her] to the
ground, or whatever, and was holding [her] wrists down." She agreed she was
scared of her father when things became physical. The older child also said she
saw her father "hitting" her younger brother for failing to clean his room.

The younger child also had an in camera discussion with the district court.
He acknowledged previously saying he felt unsafe in the home. Although he told
the court, "now I re-think that all and home's just been perfect," he stated he was
"very forgetful." He said he continued to have about two arguments per week with
his father.

Notwithstanding the younger child's equivocation, the father's admissions
support the child protective worker's findings. Specifically, he agreed his son
"reported that he feels afraid in the home." He also conceded having a physical
altercation with the older child in which he "grabbed ahold of her cheeks . . . and
. . . told [the child], 'I don't have to shut . . . up.'" And he admitted biting his older
child on the arm. Finally, he agreed he hit his children with a belt when they were
younger.

On our de novo review, we find clear and convincing evidence to support
the district court's determination the father was imminently likely to inflict a
nonaccidental physical injury on one or both of the children. *See In re B.N.*, No. 19-
1261, 2019 WL 5063342, at *3 (Iowa Ct. App. Oct. 9, 2019) ("It is enough that [the

child] described [the father's] serious anger issues and expressed her fear of staying at his home when he is under the influence."); *In re J.W.*, No. 14-0515, 2014 WL 3749419, at *3 (Iowa Ct. App. July 30, 2014) (stating Iowa case law "supports a liberal interpretation of the phrase 'imminently likely'"). Accordingly, we affirm the adjudication under section 232.2(6)(b).

### 2. *Iowa Code section 232.2(6)(c)(2)*

Iowa Code section 232.2(6)(c)(2) defines a "[c]hild in need of assistance" as "an unmarried child" "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." Harmful effects "pertain[] to the physical, mental or social welfare of a child." *J.S.*, 846 N.W.2d at 41.

The department issued a founded child abuse report concluding the father denied the children critical care. The department based the conclusion on the father's daily use of "marijuana in the presence of the children"; the older child's assertion that she was with her father when he purchased marijuana, "therefore bringing her around potential drug dealers"; the father's "erratic and hostile behaviors"; and his unwillingness "to learn other coping mechanisms." The department determined the father's "drug use contribute[d] to his parenting challenges, placing his children at risk of harm."

The founded report together with other circumstances in the home, including the father's failure to monitor the older child's comings and goings and his denial of the older child's need for mental-health care, lead us to conclude there was an imminent likelihood the children would suffer the harmful effects of the

father's failure to exercise a reasonable degree of supervision. *See In re E.M.*, No. 20-1722, 2021 WL 811135, at *1 (Iowa Ct. App. Mar. 3, 2021) ("[W]hen there is a juxtaposition of using illegal substances while being the sole caretaker of children, intervention of the State to protect the children under section 232.2(6)(c)(2) is justified.").

### 3. Iowa Code section 232.2(6)(f)

Iowa Code section 232.2(6)(f) defines a "[c]hild in need of assistance" as "an unmarried child" "[w]ho is in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others and whose parent, guardian, or custodian is unwilling to provide such treatment."

The older child was hospitalized after having suicidal thoughts. She also cut herself. She told the district court she continued to think of suicide and continued to cut herself. The father referred to her experiences as "that crap." He said "it about put [him] in therapy." When asked if his daughter was currently in therapy, he responded, "No reason for it right now." The department reported that he had "a past due balance[] with [the child's] counseling agency" and told the department "he cannot afford for her to go to therapy and that she will just 'grow out of it.'"

We agree with the district court that the State proved the older child was in need of assistance under section 232.2(6)(f).

### 4. Iowa Code Section 232.2(6)(n)

Iowa Code section 232.2(6)(n) defines a "[c]hild in need of assistance" as "an unmarried child" "[w]hose parent's or guardian's mental capacity or condition,

imprisonment, or drug or alcohol abuse results in the child not receiving adequate care."

Unlike section 232.2(6)(c)(2), this provision does not include the term "imminently likely." *See E.M.*, 2021 WL 811135, at *2. Accordingly, there must be proof that lack of adequate care has already occurred. *Id.* The department's founded child abuse report premised on use of an illegal substance in the children's presence together with the remaining evidence cited above lead us to conclude this provision was satisfied.

We recognize "the mere fact of [drug] use does not establish adjudicatory harm." *In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016). "[T]he State must establish a nexus between the father's cannabis use and an appreciable risk of adjudicatory harm to the child." *Id.*; *see also In re A.W.*, No. 20-1406, 2021 WL 377448, at *4 (Iowa Ct. App. Feb. 3, 2021). The founded abuse report establishes that nexus. According to the department, the father "admit[ted] to using [marijuana] daily and . . . use[d] in the presence of the children, and ha[d] no intention to stop." In *M.S.*, in contrast, the court stated the father's "days of cannabis use were behind him" and he did not use the drug in the presence of the child. 889 N.W.2d at 683. Because the department documented the adjudicatory harm associated with the father's drug use, we conclude the State proved the father's drug abuse resulted in inadequate care. We affirm the adjudication under section 232.2(6)(n).

**AFFIRMED.**